UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Ashland)

| | |
|---|---|
| GREGORY ALLEN PENNINGTON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 0: 13-139-DCR |
| ) | |
| V. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, ) | **AND ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment. [Record Nos. 14, 15] Plaintiff Gregory Allen Pennington ("Pennington" or "the Claimant") argues that the administrative law judge ("ALJ") assigned to his case erred in evaluating the consultative medical opinions, in determining that he does not have a mental impairment, and in finding that some of his alleged impairments are not severe impairments. As a result, Pennington seeks reversal of the ALJ's decision and an award of benefits. Alternatively, he requests remand for further consideration of his claims. The Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Pennington.

**I.**

On November 15, 2010, Pennington applied for a period of disability, disability insurance benefits, and Supplemental Security Income under Title XVI of the Social Security Act ("the Act"). [*See* Administrative Transcript, pp. 184-89; hereafter, "Tr."] He alleges a disability beginning January 11, 2007. [Tr., p. 197] Pennington's applications were denied initially and upon reconsideration. [Tr., pp. 84-85, 118-19] On May 2, 2012, an administrative hearing was held before ALJ Andrew J. Chwalibog in Huntington, West Virginia. [*Id*., p. 32] Pennington appeared and testified, represented by attorney William Grover Arnett. [*Id*.] An impartial vocational expert ("VE"), Dwight McMillion, also testified at the hearing. [*Id*.]

Pennington was forty-eight years old at the time of the ALJ's decision. He has an eighth grade education, and previously worked for a construction company for twenty-three years. At the time he filed for benefits in 2010, Pennington claimed to be disabled due to chronic obstructive pulmonary disease ("COPD"), neck and back problems; Stevens-Johnson Syndrome (a life-threatening skin rash), depression, "nerves," insomnia, and illiteracy. [Tr., p. 19] Pennington also alleged numbness in his hands and arms, worsening eyesight, worsening neck and back pain, and worsening liver disease when he filed for reconsideration. [*Id*.] Due to a somewhat inconsistent record and the nature of the changing claims,[1] Pennington underwent two additional consultative examinations in February and March 2011. [*Id*., p. 14]

After reviewing the record and testimony presented during the administrative hearing, ALJ Chwalibog concluded that Pennington suffered from the severe impairments of

---

1   ALJ Chwalibog appeared to be concerned that Pennington's medical records were inconsistent due to visits to his to hospitals while abusing alcohol. [Tr., p. 14]

polyarthralgia, chronic pulmonary insufficiency (from smoking one to two packs per days for twenty or thirty years); organic brain syndrome (mental status, confusion, cerebral atrophy by CT); affective disorder (depression/anxiety); and alcohol abuse. [Tr., p. 14]

Notwithstanding his impairments, the ALJ determined that Pennington maintained the residual functional capacity ("RFC") to perform medium work secondary to back and neck pain, subject to the following limitations:

> [Pennington] can occasionally reach and work overhead bilaterally, due to polyarthralgias; must avoid concentrated exposure to vibration and due to pulmonary disease; and, must avoid even moderate exposure to fumes, odors, gases, poor ventilation, etc. Also, [Pennington] has the ability to complete simple, routine, two steps commands; can maintain attention and concentration for two-hour segments to perform simple tasks; can maintain superficial interactions with others in a setting with minimal social demands. He would not be limited in adapting adequately to simple changes and doing simple tasks; he can drive independently, and he can make independent judgments. [Pennington] would require hands on training or oral instructions.

[Tr., p. 22]

Based on the VE's testimony, ALJ Chwalibog determined that Pennington could not perform past relevant work. [Tr., p. 23] However, after considering his age, education, work experience, and RFC, the ALJ found that Pennington could perform other work that exists in significant numbers in the national economy, such as assembler, inspector, grader/sorter, production helper, hand packer, and bench worker. [Tr., p. 26] Based on these findings, the ALJ concluded that Pennington was not disabled under the Act.

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine whether he can perform his past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). The

Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

**III.**

    **A.**    **The ALJ Correctly Considered The Medical Opinions From Consultative Sources.**

Pennington argues that the ALJ erred in relying on the opinions of psychological consultant Dr. Thompson, Ph.D. (who consulted but did not examine Pennington), over the opinion of Dr. Christopher Catt, Psy.D. (who consulted and examined Pennington).[2] Pennington asserts that because Dr. Catt's opinion is entitled to more weight under the regulations, the ALJ erred in not adopting Dr. Catt's more restrictive limitations. [Record No. 14-1, p. 9]

Under 20 C.F.R. § 404.1527(c)(1), an examining source will generally receive more weight than the opinion of a source who has not examined a claimant. 20 C.F.R. 404.1527(c)(1). However, the weight given to a medical opinion depends on a variety of other factors, including whether a source actually treated a claimant, the supportability of the source's opinion, the consistency of the opinion when compared with the record as a whole, and other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). The treating physician rule, under which the opinions of treating physicians are entitled to great deference, applies if a physician has dealt with a claimant over a long period of time and thus has a deep insight into the medical condition of the claimant.

---

2    The February 2011 opinion is also signed by Kari Ann Hall, MS.

*See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 442 (6th Cir. 2010); *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The ALJ adopted Dr. Catt's opinion that Pennington "had only a slight loss in his capacity to understand, remember, and carry out instructions toward performance of simple repetitive tasks and to sustain attention and concentration towards performance of simple, repetitive tasks due to a mental impairment." [Tr., p. 24] However, the ALJ ultimately rejected Dr. Catt's opinion that Pennington had a marked inability to tolerate the stress and pressure of daily employment and to respond appropriately to co-workers. [*Id.*] The ALJ considered that such a restrictive assessment "contrasts sharply with the other evidence in the record, which renders it less persuasive." [*Id.*] Thus, the ALJ discounted these opinions, considering them an overestimate of Pennington's restriction and noted that the severe limitations were based merely on a "snapshot" of Pennington's functioning. [*Id.*, p. 25]

Dr. Thompson reviewed the psychological medical evidence on July 12, 2011, and determined that Pennington had the ability to complete simple commands, could maintain attention and concentration for at least two hours at a time, and could complete an eight-hour workday in a forty-hour workweek. [*Id.*, p. 96] Dr. Thompson further opined that Pennington was capable of traveling alone and driving independently. [*Id.*, p. 98] These opinions that factored into the ALJ's findings regarding Pennington's RFC. Dr. Thompson found Dr. Catt's extreme limitations to be unsupported by the record.

The ALJ did not err in finding Dr. Thompson's opinions more persuasive than Dr. Catt's. First, neither doctor is a treating source; thus, the treating physician rule is inapplicable. *See Coldiron*, 391 F. App'x at 442 (treating physician rule does not apply to consultative examiners);

*Barker*, 40 F.3d at 795 (clinical psychologists' evaluation of severity of claimant's impairments not entitled to substantial deference because the nonphysician was not hired to treat claimant but was paid to examine the claimant on one occasion and administered no treatment). In addition, ALJ Chwalibog appropriately applied the factors outlined in §§ 404.1527 and 416.927. He considered the support in the record, the lack of a treatment relationship, and the opinions of other consultative psychologists. *See Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) (finding no error where an ALJ assigned more weight to a psychological consultant than an examining physician, because the appropriate factors were considered). ALJ Chwalibog's determination that one consultative medical opinion was more persuasive than another was not improper.

> **B.     The ALJ Correctly Found That Pennington Did Not Establish That He Meets Or Equals A Listed Impairment.**

The Claimant also alleges that the ALJ erred in concluding that Pennington did not meet the listed impairments of 12.05C (*i.e.*, the listing for mental retardation). That listing provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder when the requirements in [C] are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The impairment in Paragraph C requires a finding of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* "To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. §§ 404.1525(d),

416.925(d) (emphasis added). When a claimant alleges that his impairment meets or equals a listed impairment, he must present specific medical findings that satisfy the criteria of the particular listing. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Dr. Catt assessed Pennington with a full-scale IQ score of 64 in February 2011, at Pennington's consultative psychological examination. [Tr., p. 626] While noting that this was in the extremely low range, Dr. Catt also noted the inconsistency between this measure and Pennington's other scores. Thus, Dr. Catt opined that the full-scale IQ score was not the best measure of Pennington's intellectual functioning. [*Id.*]; *see also Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 869 (6th Cir. 2003) (upholding the denial of disability benefits where a claimant had an IQ of 67 because the consultative examiner found that the claimant was of borderline intelligence); *see also Baker v. Comm'r of Soc. Sec.*, 21 F. App'x 313 (6th Cir. 2001) (holding that substantial evidence supported an ALJ's determination regarding mental impairment even where claimant had an assessed IQ score of 67 because the ALJ determined that the score underestimated the claimant's true intellectual abilities). Despite Pennington's IQ score, Dr. Catt did not diagnose mental retardation, instead estimating his intelligence in the borderline range. [*Id.*] No other diagnosis or IQ test indicates subaverage intellectual functioning, much less demonstrates that such a condition manifested before the age of twenty-two. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d).

Pennington has failed to establish that he meets Listing 12.05C. *See Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450 (6th Cir. 2007) (claimant failed to establish mental retardation where there was no diagnosis by a psychologist in the record where the claimant was diagnosed with borderline intellectual functioning but he performed common activities inconsistent with

mental retardation, including semi-skilled work for a number of years, playing the guitar, and riding a motorcycle). Rather, there is substantial evidence that Pennington has borderline or greater intellectual functioning. Despite his extensive medical record, Pennington was never diagnosed with mental retardation. The Claimant worked as a construction laborer and rock driller for twenty-three years. [Tr., p. 38] He has an eighth grade education, has a valid driver's license, does housework and yard work, shops monthly, watches television, and hunts recreationally. Further, Pennington testified that he lives alone. [*Id.*, p. 37] Moreover, he prepares his own meals and cares for his dogs. [Tr., p. 225] Accordingly, the ALJ did not err in finding that Pennington did not meet the requirements of a listing. *See Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492 (6th Cir. 2010) (upholding denial of benefits for a claimant who dropped out of school in the ninth grade, had worked as a truck driver, coal miner, and light mechanic because the claimant did not have adaptive deficits). Substantial evidence supports this determination.[3]

### C. The ALJ Did Not Err In Considering Pennington's Impairments Or Combination Of Impairments.

Pennington also contends that the ALJ erred in considering his physical impairments, specifically claiming that gastroesophageal reflux disease ("GERD"), stomach problems, and insomnia render him unable to work. He argues that the ALJ failed to consider these impairments in combination with his other impairments.

---

3 Pennington alludes to the argument that the ALJ did not consider whether his impairments were equivalent to Listing 12.05. However, the ALJ considered Pennington's impairments at length and determined that he did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments. [Tr., p. 20] His lengthy discussion of Pennington's mental limitations satisfies this consideration. *See Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987).

An ALJ must consider the combined effect of all a claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. §§ 404.1523; 20 C.F.R. 416.923. "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)). Here, ALJ Chwalibog made a specific finding that Pennington "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments" in the applicable regulations. [Tr., p. 20] He also discussed each impairment in detail. [Tr., pp. 19-31] Pennington fails to explain how the combined effects of his impairments mandate a limitation in excess of the limitations in ALJ's determination.

The Court is not convinced by Pennington's argument that the ALJ should have found his stomach conditions and insomnia to be severe impairments. A claimant bears the burden of proving that he has a severe impairment, existing for twelve consecutive months, that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). Although Pennington does have documented diagnoses of GERD and insomnia, no functional limitations were ever assessed from these diagnoses. [Tr., pp. 283, 299, 302] Rather, Pennington's treating physician recommended that he seek employment.[4] [Tr., pp. 19, 282] A lack of restrictions imposed by treating physicians is substantial evidence

---

4   Pennington's counselor, Coral Johnston, M.A., similarly advised that Pennington would be an asset as a long-term employee. [Tr., p. 19]

that a claimant is not disabled. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 994 (6th Cir. 2007) (citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005). Here, treating physicians imposed no physical restrictions, instead encouraging Pennington to seek employment. The ALJ did not err in considering Pennington's impairments.

> **D. Substantial Evidence Supports The ALJ's Determination Regarding Pennington's Impairments**.

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g).

Pennington alleges that the ALJ erroneously stated that Pennington "did not testify regarding [his] terrible skin condition, his hypertension, his addiction to alcohol, or his depression, anxiety, or illiteracy/organic brain syndrome." [Tr., p. 15; *see also* Record No. 14-1, p. 11] However, the record indicates that the ALJ considered each of these alleged impairments and discussed them in reaching his determination. During the administrative hearing, the ALJ specifically asked Pennington what conditions keep him from working. In response, Pennington identified pain in his neck and back, numbness in his arms and legs, and a knot in the bottom of his foot. [Tr., p. 42] He did not mention his skin condition, hypertension, depression, anxiety, illiteracy,[5] his alcohol abuse, or any mental condition in response to that question. [Tr., p. 43]

The ALJ initially questioned Pennington regarding his alcohol abuse, stating that there were "several indications that you were in for alcohol intoxication, alcohol withdrawal, and things like that." [Tr., p. 35] Pennington indicated that he has stopped drinking alcohol, and, at the time of the hearing, had not had a drink in over a year. [*Id.*] Moreover, the ALJ considered Pennington's history of alcohol abuse in his opinion. [Tr., p. 14 ("There is [] a series of office visit notes from various physicians and hospitals showing presentations with a variety of physical and mental problems, many related to alcohol abuse."). Pennington's history of alcohol-abuse related problems is well-documented. He was treated for alcohol withdrawal and abuse in 2005, 2007, 2008, 2009, 2010, and 2011. [Tr., pp. 17-19, 687, 701-03, 707-08, 712-13, 738, 771-73] Notably, his diagnoses for depression, anxiety, and/or mood disorders were

---

5   Pennington stated that he could read simple things, but had difficulty with spelling.

primarily connected to periods of alcohol abuse. [Tr., p. 19] And the ALJ included alcohol abuse in his discussion of Pennington's severe impairments.[6] [Tr., p. 14]

Additionally, the ALJ considered the medical records regarding Pennington's skin condition. [Tr., p. 16] Treatment notes indicated that the skin condition began due to a reaction with medication and continued secondarily during treatment for alcohol-abuse related problems. [*Id.*] The condition improved quickly with medication for the condition. Dr. Haziq examined Pennington in March 2011 and indicated that the Claimant had recovered completely from any syndrome involving his skin, including Stevens-Johnson syndrome. [Tr., p. 633] Further, Dr. Haziq stated that Pennington's skin condition had no affect on his mobility. [*Id.*] The ALJ adopted Dr. Haziq's opinion that Pennington's skin condition was resolved because there was no evidence (including from Pennington's own testimony), to support a contrary conclusion. In short, substantial evidence supports ALJ Chwalibog's determination regarding Pennington's impairments.

Although Pennington suffers from some impairments, he has not established that his impairments, either singularly or in combination, are severe enough to warrant an award of disability or SSI benefits. Further, the ALJ did not err in his evaluation of the evidence. Viewing the record as a whole, substantial evidence supports ALJ determination that Pennington is not disabled under the Social Security Act.

**IV.**

For the reasons stated above, it is hereby

---

[6] The record indicates that when Pennington is not abusing alcohol, he is well-dressed, modest, an asset as an employee, and social with his family.

**ORDERED** as follows:

(1) Plaintiff Gregory Allen Pennington's Motion for Summary Judgment [Record No. 14] is **DENIED**.

(2) Defendant Carolyn W. Colvin's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

(3) The administrative decision will be **AFFIRMED** by separate Judgment to be entered this date.

This 28th day of April, 2014.

Signed By:
*Danny C. Reeves* DCR
United States District Judge